Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8529 | **DATE** | 9/29/2004 |
| **CASE TITLE** | | Lauth vs. Vlg of LaGrange Park | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants' motions for summary judgment are granted in their entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 3 0 2004 date docketed | |
| ✓ | Docketing to mail notices. Memorandum opinion distributed in open court. | | docketing deputy initials | 28 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MW6 | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHESTER A. LAUTH, )
)
       Plaintiff, )
)
v. ) No. 03 C 8529
)
DANIEL L. MCCOLLUM, )
)
       Defendant. )

DOCKETED
SEP 30 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Village of LaGrange Park's ("Village") and Daniel McCollum's ("McCollum") motion for summary judgment. For the reasons stated below, we grant Defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Chester Lauth ("Lauth") has worked as a police officer with the Village since January 2, 1989 and became Officer in Charge in August or September 2002. The Village is a municipal corporation located west of the city of Chicago. Since January 2, 1996, McCollum has been Chief of Police and reports to Steven Jones, who is the Manager of the Village. McCollum has the authority to bring charges against an officer and recommend an officer's termination, subject to approval by Steven Jones. The Board of Police Commissioners ("Board") has the final authority, subject to administrative review, to terminate sworn officers in the

1



Village. McCollum has an obligation to ensure that the laws are enforced and that police department's rules and regulations are followed.

In February 2000, the officers of the Village approached and gained information from the Fraternal Order of Police (FOP) Union about forming a union. During a FOP meeting, Lauth alleges that he complained about McCollum's unfair discipline procedures. During a meeting held on February 17, 2000, Lauth claims that McCollum stated that he knew what Lauth had said at the FOP meeting and that McCollum threatened to fire him. Subsequently, McCollum assigned Lauth to perform some legal research in the law library, which McCollum claims was in response to Lauth questioning McCollum's ability to discipline officers and send them for fitness for duty evaluations. However, Lauth argues that his assignment to do legal research was because of his union involvement.

Based on the FOP's recommendation, the officers formed a social lodge of the FOP, Lodge No. 243, on April 3, 2000. The lodge was a social organization open to any member of the police department. During the Village's annual Party in the Park in July 2000, Deputy Chief Breckinridge ("Breckinridge") instructed Lauth that he could not be present at the FOP booth while on duty. McCollum later advised Breckinridge that officers working at the Party in the Park could visit the FOP booth during their lunch and breaks. As a result, officers were allowed to take their breaks at the FOP booth the following day.

On October 19, 2000, the non-supervisory police officers voted to recognize the FOP as their bargaining agent. The FOP filed an unfair labor practice charge against the Village on behalf of Lauth on January 14, 2002. The charge resulted from Lt. Thomas Dreffein ("Dreffein") instructing Lauth that he could not consult a union representative before answering a questionnaire regarding condoms found in a

door compartment of a police squad car. McCollum told Lauth that he did not personally care if Lauth consulted with a union representative before he signed the questionnaire. Under advisement from the Village's labor attorney, McCollum posted a notice to police officers acknowledging that the Village denied Lauth's request to call his union representative prior to answering a written questionnaire.

Later in 2002, after reviewing an incident where a recovered stolen vehicle was improperly sealed on December 20, 2002, McCollum concluded that the officers needed better training on how to store recovered evidence properly. Lauth claims that at the end of his shift, he turned the stolen vehicle over to Hernandez, the officer in charge for the next shift. None of the officers involved were disciplined, and Lauth does not claim that he was singled out because of his union involvement.

On or about May 22, 2003, Lauth was the officer in charge when Officer Ricky Lee Jones ("Jones") reported a missing child to him. During an interrogation by McCollum on June 6, 2003, Lauth admitted that he should have asked more questions of Jones when Jones reported his conversation with the child's mother to Lauth. Lauth does not dispute that he violated rules and regulations requiring supervisors to inspect and ask questions of subordinates and be responsible or accountable for their acts or omissions. Moreover, Lauth alleges that he notified McCollum on February 29, 2004 that other officers failed to document a missing child that had been missing since February 5, 2004.

On May 23, 2003, Lauth hired an officer for four hours of overtime without receiving approval from the deputy chief contrary to staffing policy. The staffing policy requires that the staffing shift shortages be approved on a case by case basis by the Deputy Chief prior to authorizing any overtime expenditures. Lauth claims that he asked for clarification about the new staffing policy because it seemed to

3

violate the required policy of three officers on the street during each shift. Additionally, Lauth contends that Officer Wade ("Wade") violated the policy in January 2004, but he was never disciplined. When Lauth was asked to draft a memorandum explaining his actions in filling the staffing shortage, Lauth contends that Breckinridge told him that Breckinridge would have authorized Lauth's hiring of the overtime anyway. Lauth does not dispute that he violated the policy, and he was disciplined as a result of the violation. Lauth claims McCollum's motive for including this violation in the charges presented before the Board was not due to the violation itself, but due to his union activities.

On November 4, 2003, McCollum filed charges of misconduct with the Board against Lauth's violation of departmental policy for failing to properly supervise Jones in the missing child incident. The Board conducted a disciplinary hearing on the charges against Lauth on December 4th and 5th, 2003. Lauth claims that McCollum did not file charges against him for solely failing to properly supervise Jones, but that McCollum filed charges for failing to forward a written report on Jones' misconduct, violating the staffing policy on May 23, 2003, and failing to maintain a working knowledge of the Intergovernmental Missing Child Recovery Act of 1984. Further, prior to the hearing before the Board, Lauth was made an offer to accept the 60 day suspension without pay. Lauth contends that the 60-day suspension offer was motivated by McCollum's animus against Lauth due to his union activities and unrelated to the missing child incident.

On December 5, 2003, the Board found that: (1) Lauth violated the rules, regulations, and policies of the Village with respect to his supervision of the missing child incident; (2) he failed to forward a report of Jones' misconduct when he learned of it; (3) he failed to follow the lawful written instructions of a superior in

4

filling an overtime vacancy; and (4) his testimony demonstrated that he failed to establish and maintain a working knowledge of the Intergovernmental Missing Child Recovery Act of 1984. The Board ordered Lauth to be suspended without pay for thirty days on December 18, 2003. Lauth filed a one count complaint in the instant action alleging a denial of equal protection of the law as a class of one under 42 U.S.C. § 1983 ("Section 1983").

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986);*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Lauth argues that the Village and McCollum deprived him of his rights as a class of one that are guaranteed in the Equal Protections Clause of the Fourteenth Amendment. As an initial matter, Lauth in his answer to Defendants' summary judgment motion only asks the court to deny McCollum's motion for summary judgment and Lauth states that he "will not hold Defendant Village of LaGrange Park liable for the harms he suffered from McCollum's actions." (SJ Ans. 1). Therefore, based on Lauth's concession, we grant summary judgment in favor of the Village. We also note that regardless of Lauth's concession, summary judgment is appropriate, since there is insufficient evidence for a reasonable trier of fact to find the existence of a municipal policy or custom that could support a Section 1983 claim. *See Kujawski v. Board of Comm'rs. Of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999)(stating that a municipal governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom").

In regards to the liability of McCollum, McCollum argues that Lauth failed to identify similarly situated persons, there is insufficient evidence to find that the

6

charges against Lauth were not related to his alleged misconduct, and that McCollum is protected with qualified immunity. Under a "class of one" equal protection theory, a plaintiff must establish that he was: (1) "intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)(quoting *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002)).

## I. Similarly Situated Individuals

McCollum argues that Lauth has failed to point to similarly situated employees that were treated differently than Lauth. Even though the determination of whether a person is similarly situated is a question for the jury, the court may properly grant summary judgment where no reasonable jury could find others similarly situated. *McDonald*, 371 F.3d at 1002. The Seventh Circuit has stated that to proceed under a "class of one" theory the individuals identified by the plaintiff as similarly situated "must be very similar indeed." *Id.* We first note that Lauth introduces new arguments in his answer to the instant motion arguing unfair treatment when he was put on administrative leave, was required to turn in his badge, and was not allowed into the police department. However, Lauth fails to point to other officers in this regard that were not similarly situated and there is not sufficient evidence for a reasonable trier of fact in Lauth's favor on this issue regardless.

### A. Different Charges and Off Duty Violations

7

Lauth indicated in his answer to Defendants' interrogatories that officers Schiefelbein, Menzione, Wilkins, Wade, Chodora, and Phelan were similarly situated with Lauth. However, the above mentioned officers other than Jones are not similarly situated because the officers faced different charges (i.e. domestic violence and charges based on a speeding ticket incident), some of the officers were off duty when the alleged misconduct occurred, and none of the officers were acting as an officer in charge at the time of the misconduct. Officers Phelan and Chodora also plead guilty to the charges against them and resigned and thus McCollum had no authority over them after the incident. Therefore, no reasonable trier of fact could find that Lauth was similarly situated to above mentioned officers other than Jones.

### B. Miller 1997 and 2003 Incidents

Lauth also attempts to argue that Sgt. Miller is similarly situated with Lauth because of an incident in 1997 and an incident in 2003. However, Lauth never identified the incidents in his answer to Defendants' interrogatories and he cannot spring new arguments upon Defendants at this juncture after the close of discovery. See Bassiouni v. C.I.A., 2004 WL 1125919, at *8 (N.D. Ill. 2004)(stating that "[a] plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint."). Therefore, we bar Lauth from presenting the allegations regarding Miller at this juncture. We also note that regardless, Sgt. Miller was not similarly situated with Lauth. Unlike Lauth, Miller had prepared a report in 1997 and in regards to the alleged 2003 incident, Lauth has not pointed to sufficient evidence to conclude that Miller acted inappropriately.

8

### C. December 8, 2003 Missing Child Report

Lauth also attempts in his answer to compare his situation to that of officers Madler, Yates, Rompa, and Hernandez in regards to a December 8, 2003 missing child report. Lauth only vaguely refers to the officers in his answer stating that "other officers" failed to follow procedures regarding the incident. (Ans. 10). Based on his lack of specificity and diligence in presenting his arguments we should refuse to address it. However, regardless, Lauth presents no competent evidence of the officers' involvement or misconduct. He merely relies upon his own speculation and hearsay. Lauth admitted at his deposition that he did not know what was the officers' involvement in the alleged incident. His only basis for concluding that the officers were involved and acted improperly is that he heard generally about the matters second hand. Lauth points to a memorandum that he sent to McCollum on February 29, 2004. However, the memorandum does not refer to improperly followed procedures regarding missing children. The reliance by a plaintiff on the "plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Indus. Co., Ltd*, 126 F.3d 926, 939 (7th Cir. 1997). Lauth makes an unsuccessful attempt at creating a genuine issue of material fact by asserting unsubstantiated assertions in his factual summary in regards to the December 8, 2003 missing child report. Therefore, a reasonable jury could not find that Lauth was similarly situated to any of the above mentioned officers.

### D. Officer Jones

The only officers to whom Lauth attempts to compare himself that could be

conceivably similarly situated with Lauth is Jones. However, Lauth does not dispute that the Board ordered Jones to be terminated as a result of the missing child incident. Thus, a reasonable jury could not find that Lauth was treated differently than Jones.

II. Evidence of Animosity by McCollum

McCollum argues that there is insufficient evidence that he had animosity towards Lauth. A plaintiff bringing a "class of one" claim must show that the "defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). The plaintiff must show that there was a level of "deep-seated animosity. . . ." *See Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004) (stating that "[s]uch animosity occurs when 'a powerful public official pick[s] on a person out of sheer vindictiveness,' or when an official acts 'for the sole and exclusive purpose of exacting retaliation and vengeance against the plaintiff.")(*quoting Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995). The plaintiff has the burden of proving that he has suffered "intentional, irrational, and arbitrary discrimination." *Id.* at 707.

Lauth attempts to characterize several incidents in a manner to show that McCollum had animosity towards him. The main incident that Lauth complains about is, after a meeting with Lauth and McCollum when McCollum sent Lauth to the library to do legal research. Lauth admits that he was not disciplined over the incident. Lauth even admits that McCollum told Lauth that he was having him do the research in order to better understand the law and avoid losing his job by breaking the law. Lauth admits that he was not disciplined over the incident but

10

contends that "[t]he clear message sent by McCollum was not to question his authority, foreshadowing his actions when Plaintiff continued to do so." (Ans. 12). Such arguments are the type of speculative and unfounded conclusions that Lauth bases his claims upon. There is nothing improper in sending an officer to learn the law so that he can do his job better and to the extent that Lauth challenged McCollum's authority in regards to legitimate police business, McCollum would be justified in disciplining a subordinate for failing to follow orders. Lauth has failed to point to sufficient evidence of animosity by McCollum. Thus, no reasonable trier of fact could conclude that McCollum held animosity towards Lauth because of his union activities or based on any other reason.

### III. McCollum's Personal Involvement

McCollum argues that he was not personally involved in several of the allegations raised by Lauth. For a defendant to be personally liable, he must be "personally responsible for the deprivation of a constitutional right" and the defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville*, 266 F.3d at 740 (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

In the instant action Lauth complains about not being able to visit the FOP booth during his lunch. However, it was Breckinridge that told Lauth not to go to the booth. Even when Breckinridge mistakenly told Lauth that he could not take his break at the FOP booth, McCollum corrected the error, and all officers were allowed to take their lunches and breaks at the FOP booth the next day. Further, as mentioned above, Lauth has failed to establish that he was intentionally treated

11

differently from others similarly situated in all relevant respects to the incident. In regards to the questionnaire incident Lauth was told to sign the document without consulting the union by Lt. Dreffein and Lauth has no basis for his conclusion that the instruction came from McCollum. McCollum denies giving such an instruction.

### IV. Qualified Immunity

McCollum argues that he is protected by qualified immunity. Law enforcement officers are entitled to "qualified immunity for conduct performed within the scope of their official duties." *Dunn v. City of Elgin*, 347 F.3d 641, 648 (7th Cir. 2003)(quoting in part *Morrell v. Mock*, 270 F.3d 1090, 1094 (7th Cir.2001)). However, officers are not entitled to qualified immunity "if the plaintiff has shown a violation of h[is] constitutional rights, and . . . those constitutional rights were clearly established at the time of the violation, 'such that a reasonable official would understand that what he was doing violates those rights.'" *Id.* (quoting in part *Morrell v. Mock*, 270 F.3d 1090, 1094 (7th Cir.2001).

Lauth claims that a constitutional violation has been established by McCollum's attempts to severely punish Lauth. However, Lauth has failed to demonstrate that he was deprived of any rights guaranteed by the Equal Protections Clause of the Fourteenth Amendment. As explained above, no reasonable jury could find that Lauth was intentionally treated differently from those similarly situated due to his union-related activities in all relevant respects. In addition, even if there were a constitutional violation entangled in Lauth's broad set of vague allegations, no reasonable officer in McCollum's position would have understood that what he was doing violated Lauth's constitutional rights. Therefore, McCollum is entitled to

qualified immunity.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 29, 2004